# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MARK REYES,

        Plaintiff,

v.                                   No. CIV 07-1213 BB/LFG

GEORGE TAPIA, LEONARD MANZANARES
CANDIS STODDARD, JONI BROWN,
AARON BELL, GERALD ORTIZ, DENIS MARES,
LEON MARTINEZ, CHARLES LINDSEY,
JOSEPH PACHECO, and JOHNNY ARIAS,

        Defendants.

## MAGISTRATE JUDGE'S ANALYSIS
## AND RECOMMENDED DISPOSITION[1]

### Introduction

    This is a *pro se, informa pauperis* civil rights action brought under 42 U.S.C. § 1983 by Plaintiff Mark Reyes ("Reyes").[2]  Reyes is currently incarcerated at the State Penitentiary in Santa Fe, New Mexico ("State Penitentiary").

---

[1] **Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations.  A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.**

[2] Reyes' initial pleading was docketed as a motion for § 2254 relief; however, after he filed additional "amendments" and "notices," the case was reassigned as a § 1983 proceeding and Reyes was allowed to file an amended civil rights complaint.

**Procedural Background**

On February 8, 2008, Reyes filed an Amended Complaint [Doc. 21.] Between February 8 and March 18, 2008, Reyes filed nine pleadings, which the Court construed as his civil rights complaint, including the initial Amended Complaint ("amended complaint").[3] [Doc. Nos. 21-30.] In addressing Reyes' claims, the Court reviewed all of these pleadings.

On August 18, 2008, the Court conducted a *sua sponte* of Reyes' amended complaint, in accordance with 28 U.S.C. § 1915(e)(2) and Fed. R. Civ. P. 12(b)(6), and dismissed a number of claims and Defendants. [Doc. 32.] As of that date, Reyes' remaining claims consisted of the alleged failure to safeguard Reyes' well-being, sexual harassment, discrimination, interference with mail, denial of free exercise of religion and retaliation.  The remaining Defendants were: George Tapia, Leonard Manzanares, Candis Stoddard, Joni Brown, Aaron Bell, Gerald Ortiz, Denis Mares, Leon Martinez, Charles Lindsey, Joseph Pacheco, and Johnny Arias. [Doc. 32.]

On October 16, 2008, these Defendants filed an Answer with exhibits, including affidavit statements and copies of pleadings in the related state court criminal proceeding. [Doc. 41.] On January 6, 2009, the Court conducted another *sua sponte* review of Reyes' remaining claims and further narrowed the lawsuit. [Doc. 42.] The Court determined that claims concerning any alleged unlawful conduct occurring before November 2004 were dismissed, with prejudice, because they were barred by the applicable three-year statute of limitations. [Doc. 42, p. 4.] The Court clarified that the claims of failure to safeguard Reyes' well-being, sexual harassment, discrimination, interference with mail, denial of free exercise of religion and retaliation, for the period of November

---

[3]In an Order entered August 27, 2008 [Doc. 33], the Court denied Reyes' motion for injunctive relief [Doc. 28].

2004 to present, as asserted against Defendants Tapia, Manzanares, Stoddard, Brown, Bell, Ortiz, Mares, Martinez, Lindsey, Pacheco and Arias, were to proceed. [Id.]

On January 7, 2009, the Court ordered Defendants to produce a Martinez report as to the remaining claims for purposes of investigating the incidents that formed the basis of Reyes' lawsuit. [Doc. 43.] The January 7 Order advised the parties that the Martinez report could be used for determining whether summary judgment was proper.  Reyes was allowed time to submit a response to the Martinez report, in order to present conflicting evidence, if any he had, to controvert the facts set out in the report. [Doc. 43, pp. 4-5.]

The Court's Order directing a Martinez report requested extensive information from Defendants for the period beginning in November 2004 to the present. [Doc. 43, pp. 5-7.] Subsequently, Reyes filed another series of pleadings, including a motion for restraining order and request for transfer, a motion to appoint counsel, and a notice of alleged retaliation. [Doc. Nos. 44-49.] On January 26, 2009, the Court issued an Order denying the motions and prohibiting further amendment of the amended complaint. [Doc. 51.] In the January 26 Order, the Court clarified that any new claims purportedly raised in this new series of pleadings would not be reviewed by the Court in addressing Reyes' amended complaint. [Doc. 51.]

On March 12, 2009, Defendants filed a comprehensive Martinez report in response to the Court's Order.  The report consists of over 800 pages of attachments. [Doc. 52.] Reyes sought an extension of time to file a response to the Martinez report, which was granted.  Reyes filed his response on April 24, 2009. [Doc. 55.]

In reaching its recommended disposition, the Court considered the relevant law and pertinent pleadings, including Reyes' amended complaint (consisting of multiple pleadings already specified above), attachments to Reyes' pleadings, Defendants' Answer and attachments, the Martinez report

3

and exhibits, and Reyes' response.  After careful consideration, the Court recommends that summary judgment be granted in favor of Defendants as to all of Reyes' claims, and that this case be dismissed, without prejudice, for failure to exhaust administrative remedies.[4]

## Background

The following facts are taken from exhibits to Defendants' Answer and Martinez report. [Doc. Nos. 41, 52.] Reyes did not present any evidence to contradict the following summary of the underlying procedural proceeding.  Unless otherwise noted below, the facts are undisputed.

Based on the pertinent time frame, November 2004 to present, Defendants provided evidence that Reyes was incarcerated as of May 27, 2004 (and earlier) with the New Mexico Corrections Department ("NMCD"), and that from July 6, 2005 to June 30, 2006, Reyes was released from NMCD into the custody of the Chavez County Sheriff, pursuant to an Order from the New Mexico Court of Appeals.  [Doc. 52, Ex. 1, Jeff Serna Aff., ¶ 4.] The Court of Appeals ordered the release and remand upon finding that Reyes was entitled to a new trial on the same charges for which he was originally sentenced.  Reyes was allowed to represent himself at the new trial, with stand-by counsel.[5] [Id.]

On May 1, 2006, Reyes was found guilty of Counts 1 (Attempted First Degree Murder with a Three-Year Firearm Enhancement, or in the alternative, Retaliation Against a Witness with a Three-Year Firearm Enhancement), and Count 2 (Firearm or Destructive Devices; Receipt,

---

[4]It is unclear why Defendants did not move for summary judgment at the outset based on Reyes' failure to exhaust administrative remedies.  Although they attached short affidavits to the Answer regarding failure to exhaust, Defendants did not request summary judgment.  Indeed, at that time, they were not definite about Reyes not having exhausted his administrative remedies. [See Doc. 41, p. 13] ("While the Plaintiff here *may not have* exhausted his administrative remedies . . . .") (emphasis added).  As a result, the Court was compelled to examine the issue of exhaustion more thoroughly, along with Reyes' multiple claims and pleadings, by way of a Martinez report.

[5]Contrary to Reyes' position, Reyes' initial conviction was not overturned, resulting in a release from incarceration.  Instead, he remained in custody while he awaited the new trial that was granted.

Transportation or Possession by a Felon) (County of Chaves, State of New Mexico, State v. Mark Reyes, No. CR-2000-170.) [Doc. 41, Ex. 5.]   The Judgment explained that on November 15, 2000, the State Court granted a motion for directed verdict as to Count 3 (Tampering with Evidence).

On June 6, 2006, the State Court sentenced Reyes, who represented himself with stand-by counsel. [Id.]  The State Court found that Reyes was a Habitual Offender with two prior convictions.

The State Court sentenced Reyes to 9 years as to Count 1 and 18 months as to Count 2, which were to run consecutively.  The State Court found the existence of aggravating circumstances as to both Counts, including that Reyes threatened the life of a sheriff's deputy when he was transported to and from court, the victim of the attempted murder was the same person Reyes was convicted of shooting previously, and Reyes made threatening statements about future violence in his response to the State's motion seeking aggravation. [Id.]

The State Court found each of the aggravating circumstances sufficient to warrant an increase in the basic sentence of imprisonment.  Thus, Reyes' sentence as to Count 1 was enhanced by three years in accordance with the firearm enhancement statement and three years for aggravating circumstances.  The sentence in Count 2 was enhanced by six months for aggravating circumstances. The sentence in Count 1 was enhanced by 4 years and the sentence in Count 2 by one year as a result of having been found a habitual criminal offender.  Reyes' total term of incarceration was 22 years.[6] [Id.]

After his conviction, Reyes was returned to NMCD custody on June 30, 2006.  [Doc. 52, Serna Aff., ¶ 4.] He was incarcerated at the Central New Mexico Correctional Facility until

_____

[6]Reyes appealed his conviction.  On March 26, 2007, the New Mexico Court of Appeals issued a Memorandum Opinion affirming his conviction. [Doc. 41, Ex. 6.] On appeal, Reyes argued, in part, that he was denied a fair trial based on the destruction and loss of evidence and lack of access to a law library and legal research. The Court of Appeals denied the appeal and affirmed the conviction.

September 12, 2006 [Doc. 52, Ex. 1A,  Ex. 6, Martha Gutierrez Aff. at ¶ 6] (*see* discussion *infra*), but was later transferred to the State Penitentiary's South Facility.[7]  [Doc. 52, Ex. 1A.] On October 23, 2006, Reyes was transferred to the State Penitentiary's North Facility, and on January 24, 2008, back to the South Facility. [Id.]

During his ongoing incarceration with NMCD, Reyes was found guilty of many instances of misconduct for which he received discipline.  For example, Defendants supplied documentation of multiple instances of disciplinary actions taken against Reyes during the pertinent time frame, 2004-January 2009.  Disciplinary or misconduct reports for Reyes are attached to the Martinez report as Exhibits 4A-4Q.  Reyes was disciplined, *inter alia*, for advocating or creating a facility disruption, multiple instances of threats and verbal abuse or gestures, assault or battery without a weapon on a staff member or visitor, battery, assault or battery with a weapon on a staff member or visitor, damage to property, refusal to submit to a urinalysis or drug test, possession of contraband items, and disobeying a lawful order.  After assessment of the evidence, Reyes was found guilty of most of the many charges of misconduct.  He was disciplined through a variety of measures, including loss of privileges, forfeiture of meritorious deductions/good time, and disciplinary segregation.  [Doc. 52, Ex. 4, Leon Martinez Aff., and Exhibits 4A-4Q.]

In response to the Court's Martinez report, Defendants provided a description of NMCD's custody system, which the Court does not explain further based on its recommendation below as to exhaustion of administrative remedies.  Briefly stated, according to Defendants, at all times during the relevant time frame (Nov. 2004-present), Reyes was incarcerated at either Level V or VI for his continued pattern of misconduct in violation of NMCD rules, regulations, or policies.  At the time

---

[7]"PNM North (facility)" and "PNM South (facility)" are old designations but still used by staff and inmates. The current official designations are PNM Level V and PNM Level VI. [Doc. 52, Serna Aff., ¶ 6.]

of his remand for a new trial in 2005, Reyes was in disciplinary segregation in Level VI. [Doc. 52, Serna Aff., ¶ 18.]

On June 30, 2006, upon his return to custody at the State Penitentiary, Reyes was placed into Interim Level VI Segregation at the Reception and Diagnostic Center, at Central New Mexico Correctional Facility (RDC/CNMCF), the NMCD's reception center for all new male inmates. This was done to update Reyes' file and determine his proper placement as he was then considered a "new" inmate. [Id., ¶ 23.]

On July 14, 2006, Reyes' status was changed to that of an inmate being a threat to the security of the institution due to his history of assaultive behavior. From July 14, 2006 through January 24, 2008, Reyes remained at Level VI, where he both "regressed" and "progressed" between step levels due to behavior. [Id., ¶¶ 25, 26.] On January 24, 2008, Reyes was transferred to "South" or Level V, where he presently is incarcerated. He has regressed and progressed among the steps and is at step 3, due to improvement of his behavior.

On April 30, 2008, Reyes was placed in pre-hearing detention at South (Level V), pending a disciplinary hearing. On May 8, 2008, he was placed into disciplinary segregation at Level V.

### Summary Judgment Standard

The Court may grant summary judgment, under Rule 56(c) of the Federal Rules of Civil Procedure, if the pleadings, depositions, answers to interrogatories and admissions or affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The opposing party must be given notice and an opportunity to respond, as provided in Rule 56. Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991).

Defendants, having filed a Martinez report, are in the same position as a movant for summary judgment and therefore, carry the burden of establishing that there is no genuine issue of

material fact for trial.  Defendants may satisfy that burden by showing an absence of evidence to support Reyes' claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986).  Once the movants meet their burden, the burden shifts to Reyes to demonstrate a genuine issue for trial on a material matter.  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  The party opposing the motion may not rest on pleadings, mere argument, or contention but must set forth specific facts through admissible evidence, showing there is a genuine issue for trial as to those dispositive matters for which he carries the burden of proof.  If he cannot make such a showing, summary judgment in favor of Defendants is appropriate.  Celotex, 477 U.S. at 324.

The Tenth Circuit Court of Appeals further explained in Reed v. Bennett that the nonmovant's burden to respond arises only where the summary judgment motion is properly "supported."  Reed v. Bennett, 312 F.3d 1190, 1194 (10th Cir. 2002).

> Accordingly, summary judgment is 'appropriate' under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c).  If the evidence produced in support of the summary judgment motion does not meet this burden, 'summary judgment must be denied, *even if no opposing evidentiary matter is presented.*'

Id. (emphasis in original) (internal citation omitted).

### Analysis

### Exhaustion of Administrative Remedies

In accordance with the Prison Litigation Reform Act of 1995 ("PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e *et seq.*, inmates must exhaust prison grievance procedures before filing a lawsuit.  28 U.S.C. § 1915A; 42 U.S.C. § 1997e(a).

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.  42 U.S.C. § 1997e(a).

8

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (internal citation omitted).

In their Answer, Defendants denied the allegations and raised the affirmative defense that Reyes' did not exhaust administrative remedies as to any of the claims. [Doc. 41, p. 12.] In support of the defense, Defendants attached an affidavit by Ralph Casaus, the NMCD Inmate Grievance Coordinator, who stated he had no record of grievances filed by Reyes from 2006-September 30, 2008. [Doc. 41, Ex. 15, Casaus Aff., ¶ 6.]

In the Martinez report, Defendants again asserted that Reyes did not exhaust his administrative remedies with respect to any complaints during the pertinent time frame.  Mr. Casaus attached another affidavit, stating that from the period November 2004 through January 7, 2009, with the exception of the period Reyes was in the custody of Chaves County awaiting trial,[8] there is no record of a grievance filed by Reyes against any of these Defendants.  [Doc. 52, Ex. 5, ¶¶ 1-5.] According to Casaus, Reyes filed one grievance while at Level VI at the State Penitentiary but the persons against whom it was filed are not Defendants in this case and the grievance was not appealed. [Id., ¶ 6.]

Defendants also supplied the affidavit of Wayne Gallegos, Unit Manager/Grievance Officer at the State Penitentiary, Level V special control unit. [Doc. 52, Ex. 5A, Wayne Gallegos Aff., ¶ 1.] Mr. Gallegos averred that he reviews all formal and informal grievances made by inmates at the State Penitentiary.  Although not in the custody of the State Penitentiary from July 6, 2005 through June 30, 2006, there is no record of grievances filed by Reyes for the remainder of the pertinent time

---

[8]It is unknown whether Reyes filed grievances concerning his treatment while in custody awaiting his re-trial in Chaves County but even if he did, they have no bearing on this lawsuit.

frame, i.e., from November 1, 2004 through January 7, 2009. [Id., ¶¶ 4, 5, 7.] "Again, the [Defendants] can find no evidence that the Inmate [Reyes] has even filed one (1) internal grievance with this Department [NMCD], at any time, before he filed this cause of action." [Doc. 52, p. 7.]

In response to Defendants' admissible evidence that Reyes did not exhaust administrative remedies as to any of his claims, Reyes provides no evidence to show that he filed any grievances. He did not supply any copies of grievances, nor did he provide a list of alleged grievances he filed by date or subject, including the date of receipt by the facility, the disposition, or the appeal of the grievance. There is no indication, let alone admissible evidence, to show that Reyes filed grievances and followed through with the grievance procedure.

Instead, Reyes relies only on unsupported argument, which is insufficient for purposes of summary judgment. For example, he claims that Defendants made "false statements" that he filed no grievances from 2004 - January 2009. [Doc. 55, p. 1.] He further argues that Defendants filed a "deliberately deceitful report" and that they now seek to "later modify" what they filed so that Reyes will not have an opportunity to respond. [Id.] It is untrue that Defendants seek to modify the Martinez report, nor did the Court order an amendment of the Martinez report.

In addition, Reyes contends that "all of my grievances filed from 2004 to 2005 are located in my property in Roswell due to being returned after hearing in Fifth Judicial District Court to Roswell on June 10, 2009. I have filed grievances against Ralph Casaus and Wayne Gallegos." [Doc. 55, p. 2.] Reyes also states that he has copies of over 40 grievances in his property in Roswell for which he is awaiting receipt in June. Reyes' unsubstantiated argument that he filed grievances is not persuasive. His position that alleged grievances are all being held in Roswell until June 2009 is nonsensical and unsupported. He provides absolutely no evidence to demonstrate that he filed actual written grievances during the pertinent time frame relating to the claims in this lawsuit.

The Court not only reviewed Reyes' response to the <u>Martinez</u> report, but also his voluminous pleadings that comprise Reyes' complaint. [Doc. Nos. 21-30.] In some of these pleadings, Reyes states summarily that he filed a grievance but it was denied. [*See, e.g.,* Doc. Nos. 21, 22.] In another pleading, Reyes stated that he filed a "complaint to the District Court in Chaves County" but that nothing was done. [Doc. 26.] In some instances, Reyes stated that he did not exhaust administrative remedies because there were none available. [Doc. Nos. 23, 25, 27.] Reyes also stated he had not exhausted administrative remedies because he was transferred to another prison before he could do so. [Doc. 24.]

The Court recognizes that it is no longer the plaintiff's burden to plead and prove exhaustion of administrative remedies in the complaint. <u>Jones</u>, 549 U.S. at 216. However, once Defendants provide admissible evidence that no grievances were filed, as was done here, the burden shifts to Reyes to demonstrate a genuine issue for trial on the question of exhaustion of administrative remedies. Reyes may not rely on mere argument or contention, but must set forth specific facts through admissible evidence to raise a genuine issue of fact. Reyes presents nothing more than inadmissible evidence, and, at times, nonsensical and unpersuasive argument. Moreover, to the extent that Reyes believes it would have been futile to have attempted to file a grievance, this does not excuse him from exhausting administrative remedies. "Even when [a] prisoner seeks relief not available in grievance proceedings ... exhaustion is a prerequisite to suit." <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002). In addition, the United States Supreme Court has stressed it "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." <u>Booth v. Churner</u>, 532 U.S. 731, 741 n. 6 (2001).

The Court determines that Reyes fails to provide any evidence that might raise a genuine issue of material act regarding his exhaustion of administrative remedies as to his remaining claims.

Therefore, the Court recommends that his complaint be dismissed, without prejudice, for failure to exhaust administrative remedies.

### **Recommended Disposition**

That summary judgment in favor of Defendants be granted and that Reyes' amended complaint and all pleadings made part of that complaint, be dismissed, without prejudice for failure to exhaust administrative remedies, and that this action be dismissed.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge